UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| JTS, LLC d/b/a JOHNSON'S TIRE SERVICE, LLC, | ) ) ) |
| Plaintiff, | ) 3:14-cv-00254 JWS ) |
| vs. | ) ORDER AND OPINION ) |
| NOKIAN TYRES PLC; NOKIAN TYRES, INC.; and NOKIAN TYRES US HOLDINGS INC., | ) [Re: Motion at Docket 9] ) ) ) |
| Defendants. | ) ) |

## I. MOTION PRESENTED

At docket 9, defendants Nokian Tyres PLC ("Nokian PLC") and Nokian Tyres US Holdings Inc. ("Nokian Holdings"; collectively "Defendants") move to dismiss the action against them for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, leaving only Nokian Tyres, Inc. ("Nokian North America") as a defendant in the matter. Plaintiff JTS, LLC ("JTS") opposes the motion at docket 13. Defendants' reply is at docket 16. Oral argument was not requested and would not be of assistance to the court.

## II. BACKGROUND

JTS, d/b/a Johnson's Tire Service, is an Alaskan Corporation formed in 2006 with its corporate offices in Anchorage, Alaska. It is in the retail tire business. Kelly Gaede is President of JTS. He used to work as Vice President of Marketing and Sales at Nokian North America. He and his father, Dennis Gaede, the former President of Nokian North America, were extensively involved with JTS's purchase of Johnson's Tire Service in 2006 from James Johnson, the former owner.

Nokian PLC is a Finland corporation with its corporate headquarters in Finland. It is a tire manufacturer. Nokian North America is a Delaware Corporation with its head office in Vermont. It is a subsidiary of Nokian PLC and is engaged in the sale and distribution of Nokian-brand tires in North America. It is undisputed that Nokian North America conducts business in the State of Alaska and has conducted business and entered into contracts with JTS. Nokian North America therefore does not dispute the court's exercise of jurisdiction over it. Nokian Holdings is a Delaware Corporation with its head office in Vermont and is also a subsidiary of Nokian PLC. Nokian Holdings does not sell or distribute Nokian-brand tires.

JTS filed a complaint against the three Nokian companies alleging a breach of contract, a breach of the covenant of good faith and fair dealing, and a violation of Alaska's Unfair Trade Practices Act.[1] All three claims primarily sound in contract law. JTS alleges in its complaint that in 1997 Johnson's Tire Service, through then-owner James Johnson, entered into an oral and written agreement with Nokian PLC whereby

---

[1] AS § 45.50.471.

Nokian PLC agreed to supply Nokian tires on specified terms and at specified prices and agreed that Johnson's Tire Service would be the exclusive representative and distributor of Nokian-brand tires in the State of Alaska. The complaint alleges that at the time the parties entered into the agreement it was understood and agreed that the agreement would automatically renew every year unless changed in writing. While somewhat unclear, the court has gathered from the complaint and Plaintiff's affidavits in support that Plaintiff believes the financial terms of the parties' agreement have been changed over the years and as recently as 2008, but that the exclusive distribution agreement has remained in effect, even after JTS purchased Johnson's Tire Service from James Johnson and has been at least orally reconfirmed. The complaint and affidavits in support allege that the exclusive distribution agreement was negotiated, maintained, and modified the agreement with representatives from all three Nokian companies.

### III. STANDARD OF REVIEW

Where a defendant moves to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of establishing that personal jurisdiction exists.[2] Where the motion is based only upon written materials, rather than an evidentiary hearing, the plaintiff is required only to make a prima facie showing of personal jurisdiction.[6] In determining whether the plaintiff has made such a prima facie showing, "uncontroverted allegations in [the]

---

[2]*Fields v. Sedgwick Associated Risks, Ltd.,* 796 F.2d 299, 301 (9th Cir. 1986).

[6]*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

complaint must be taken as true."[7] However, allegations in the complaint are not entitled to the presumption of validity when contradicted by a declaration or affidavit.[8] Where the plaintiff submits affidavits or declarations in support of its complaint, "conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists."[9]

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits."[10] Alaska's long-arm statute authorizes the exercise of jurisdiction to the extent permitted by federal due process requirements.[11] Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[12]

There are two types of personal jurisdiction, general and specific.[13] "General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic.'"[14] In the absence of general

---

[7]*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

[8]*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1284 (9th Cir. 1977).

[9]*Am. Tel. & Tel. Co.,* 94 F.3d at 588 (internal quotations omitted).

[10]*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

[11]*Volkswagenwerk, A.G. v. Klippen, GmbH*, 611 P.2d 498, 500 (Alaska 1980).

[12]*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

[13]*Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir. 1998).

[14]*Id.*

jurisdiction, the court may exercise personal jurisdiction if specific jurisdiction exists. The Ninth Circuit uses a three-part test to determine whether specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.[15]

The party seeking to assert jurisdiction bears the burden of showing the first two prongs are met. If it does so, then the burden shifts to the opposing party to present a "compelling" case that exercising personal jurisdiction would be unreasonable.[16]

## IV. DISCUSSION

**A.    Nokian PLC**

Plaintiff asserts that the court has general jurisdiction over Nokian PLC. The standard for exercising general jurisdiction over a party is high and requires contacts with the forum state that "approximate physical presence."[17] Plaintiff does not allege that Nokian PLC has any offices or employees in Alaska, or that it has agents for service of process in Alaska. There is nothing to suggest that Nokian PLC regularly had its representatives or employees travel to Alaska. There is nothing to show that it has any financial assets in Alaska or that it pays taxes in Alaska or that it has any other

---

[15]*Wash. Shoe Co. v. A-Z Sporting Goods Inc.,* 704 F.3d 668, 672 (9th Cir. 2012) (citations omitted).

[16]*Id.*

[17]*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

connection to Alaska that could be deemed continuous and systematic. Thus, Plaintiff has failed to make a prima facie case for general jurisdiction.

Plaintiff alternatively argues that the court can exercise specific jurisdiction over Nokian PLC. The first prong of the specific jurisdiction test set forth above is analyzed under either a purposeful availment standard or a purposeful direction standard, which are "two distinct concepts."[18] The purposeful availment standard is to be used in cases which sound primarily in contract.[19] The purposeful direction standard is applied in tort cases and allows personal jurisdiction to "attach if the defendant's conduct is aimed at or has an effect in the forum state."[20] Since the claims against Defendants sound primarily in contract, the court will apply the purposeful availment standard.

Under the purposeful availment standard, the court looks at whether the defendant's contacts with the forum state result from actions by the defendant itself and whether those contacts create a substantial connection. The standard is met where the defendant has deliberately engaged in significant activities within the forum or has created continuing obligations between itself and forum residents.[21]

Plaintiff's complaint alleges that it had at least an oral agreement with PLC in which it was authorized to be the exclusive distributor of Nokian tires in Alaska. The affidavit submitted in support of Defendants' motion does not specifically dispute this fact; it says that Nokian PLC does not conduct business in Alaska and that it does not

---

[18]*Schwarzenegger*, 374 F.3d at 802.

[19]*Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)

[20]*Panavision,* 141 F.3d at 1321.

[21]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).

directly sell tires to Alaska, and that it never charged JTS interest pursuant to an agreement, but it does not aver in its supporting affidavit that it never had an exclusive distribution agreement with JTS or its predecessor, Johnson's Tire Services, or that it never shipped its tires directly to JTS.[22]  Moreover, even if PLC did specifically contest the existence of an exclusive distribution agreement in its supporting affidavit, the affidavits from the Gaedes that Plaintiff filed in support of jurisdiction assert otherwise[23] and, as discussed above, the court must resolve disputed facts in favor of Plaintiff and assume that there was at least an oral agreement of exclusivity underlying all of the parties' subsequent dealings.  Nokian PLC also cites to a provision in a 2008 purchase and sale agreement between Nokian North American and JTS which states that the purchase and sale agreement constitutes the entire contract between the parties relating to JTS's purchase of winter tires from Nokian.  Nokian PLC argues that such a provision proves there could not have been an agreement about exclusivity between the parties, but again, the court has to find in favor of the Plaintiff's supporting affidavits that indicate it had at least a long-standing oral agreement about exclusivity separate from that specific purchase of winter tires in 2008 that endured throughout the parties' relationship.

The existence of an agreement between the parties, however, does not resolve the jurisdictional question because a defendant's "contract with an out-of-state party

---

[22]It does contest the existence of such an exclusivity agreement in its briefing, but the court must look at the supporting documentation.

[23]See, e.g., doc. 13-1 at p. 5, ¶¶ 21-24; doc. 13-1 at p. 29, ¶ 6; doc. 13-1 at p. 31, ¶ 20; doc. 13-1 at p. 32, ¶ 21-25.

alone" cannot "automatically establish sufficient minimum contracts in the other party's home forum."[24] Rather, when personal jurisdiction is asserted based on a contract between parties, the Supreme Court has instructed courts to use a "highly realistic" approach to determine whether the contract creates a substantial connection to the forum state:

> . . . [A] contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contact within the forum.[25]

In other words, "[p]urposeful availment requires that the defendant '[perform] some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'"[26]

Plaintiff has not presented enough information for the court to find that the parties' prior negotiations related to the exclusive distribution agreement or any subsequent modifications to that agreement support a finding of minimum contacts on the part of Nokian PLC. Plaintiff does not give any information about who initiated contact in 1997 when the original agreement between JTS's predecessor and Nokian PLC was negotiated. The only information on the record is that Plaintiff, through Kelly Gaede, reached out in 2006 to Nokian North America and Nokian PLC regarding

---

[24]*Id.* at 478.

[25]*Id.* (internal quotations and citations omitted).

[26]*Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (quoting *Sinatra v. Nat'l Enquirer, Inc.,* 854 F.2d 1191, 1195 (9th Cir. 1988)).

modification and expansion of the parties' prior relationship and agreements. Negotiations took place via email, mail, and phone calls, but such indirect contacts do not qualify as purposeful activity warranting the exercise of personal jurisdiction.[27]

Even though the negotiations did not lead to significant contacts with Alaska, the nature of an exclusive distribution agreement and the future consequences that flow from such an agreement strongly favor a finding of purposeful availment on the part of Nokian PLC here. Such an agreement creates continuing obligations on the part of Nokian PLC to an Alaska resident. Taking as true that there was a longstanding distributorship agreement whereby JTS had the right to be the sole retailer of Nokian PLC's tires in Alaska, Nokian PLC should have reasonably anticipated being haled into court in Alaska.[28] Indeed, based on Plaintiff's supporting affidavits, Nokian PLC fostered its long-standing relationship to JTS by financing JTS representatives to travel to Finland for conferences and product launches and meetings, and by sending a representative from Nokian PLC to visit Johnson Tires Services in order to strengthen its relationship with the retailer. Plaintiff, through the affidavit of Kelly Gaede, asserts that Nokian PLC also helped it defend its exclusive distribution agreement against another unauthorized retailer in Alaska. While Nokian PLC disputes this fact, conflicts in the parties' affidavits must be resolved in Plaintiff's favor. Also, Nokian tires were

---

[27]*Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (noting that "use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state").

[28]*See Excel Plas, Inc. v. Sigmax Co., Ltd.*, No. 07-cv-578, 2007 WL 2853932, at * 8 (S.D. Cal. Sept. 27, 2007) (listing cases where other courts have found purposeful availment in a situation where the parties have entered into long-term distributorship agreements).

shipped directly from Nokian PLC's Finland plant to JTS in Alaska. In sum, the future obligations entailed in the agreement created a connection to Alaska to satisfy the minimum contacts requirement. Plaintiff has sufficiently shown through its complaint and affidavits that its agreement with Nokian PLC envisioned an enduring relationship with an Alaskan company.

As for the second prong of the specific jurisdiction analysis, the claims here clearly arise out of Nokian PLC's forum-related contacts. Nokian PLC's link to Alaska is based on its exclusive distribution agreement with JTS and that agreement is also the basis for Plaintiff's contract claims against Nokian PLC. In other words, Plaintiff's claims would not have arisen "but for" Nokian PLC's contacts with the forum.[29]

Plaintiff has satisfied its burden of establishing a prima facie case for personal jurisdiction over Nokian PLC. The court must next consider whether the exercise of such jurisdiction would be reasonable.[30] The Ninth Circuit looks at a variety of factors when determining whether exercise of jurisdiction over a nonresident defendant is reasonable:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.[31]

---

[29]*Doe v. Unocal Corp.*, 248 F.3d 915, 924-25 (9th Cir. 2001).

[30]*Dole Food*, 303 F.3d at 1111.

[31]*Id.* at 1114.

While it is Nokian PLC's burden to demonstrate unreasonableness, Nokian PLC does not address these factors in its briefing. Rather, it simply argues that because it does not have any direct contacts with Alaska, "imposing jurisdiction under such circumstances would constitute overreaching and an impermissible extension fo Constitutional authority."[32] In its reply brief, it also argues that imposing jurisdiction would be unfair because the operations manager for JTS admitted that JTS does not have an exclusive distribution agreement with Nokian PLC. However, a close reading of the evidence cited shows that the manager believes the parties had an oral exclusivity agreement.[33]

      Turning to the factors listed above, the court concludes that the only factor weighing in favor of Nokian PLC is the relatively minimal extent of Nokian PLC's interjection into Alaska, which is limited to the exclusivity agreement and not on direct physical contact. The court also acknowledges the potential burden on Nokian PLC in litigating in a foreign country. However, courts have recently "noted there will inevitably be a burden on foreign defendants to participate in United States litigation, but reasoned the burden is reduced by modern advances in communications and travel."[34] All other factors weigh in favor of retention of jurisdiction over Nokian PLC. Nokian PLC has not presented a compelling case that it would be "so gravely difficult and

---

[32]Doc. 10 at p. 12.

[33]Doc. 16-6 (Ex. F) at p. 1.

[34]*Excel Plas*, 2007 WL 2853932, at *10.

inconvenient" to litigate in Alaska or that it is at a "severe disadvantage" by having to do so.[35]

### B. Nokian Holdings

As was the case with Nokian PLC, Plaintiff has not demonstrated that Nokian Holdings has any type of connection to Alaska that could be deemed continuous and systematic to warrant the court's exercise of general jurisdiction over Nokian Holdings. Plaintiff has also failed to make the requisite showing needed to establish specific jurisdiction over Nokian Holdings. That is, there is nothing on the record to show that Nokian Holdings purposefully availed itself of the privilege of doing business in Alaska through the exclusive distribution agreement that forms the basis of Plaintiff's complaint. Nokian Holdings disputes that it had an exclusive distribution contract with Johnson Tire Service or JTS. It is not clearly stated in Plaintiff's affidavits that Nokian Holdings was involved in agreeing to exclusive distribution, which is the basis of Plaintiff's claims against Defendants. Indeed, Nokian Holdings is not in the business of selling or distributing tires or any other product. Rather, based on Plaintiff's supporting affidavits, Nokian Holdings appears to be a financing subsidiary, and its involvement in any agreements with Plaintiff appears to be limited to negotiations regarding pricing, interest rates, and other financing terms. Thus, unlike PLC, the court cannot conclude from Plaintiff's affidavits that Nokian Holdings itself was a party to the original exclusive distribution agreement, which is the basis of all three of Plaintiff's claims. At most, the affidavits suggest that JTS may have had an ancillary financing agreement with Nokian

---

[35]*Burger King*, 471 U.S. at 478.

Holdings, but Plaintiff claims a breach related to exclusive distribution, not financing terms.

Plaintiff argues that Nokian Holdings has sufficient contacts with Alaska because communications about the financial terms of the parties' agreements over the years were conducted through Jari Lepisto, the President of Nokian Holdings. While Lepisto may have engaged in numerous out-of-state meetings and email communications with JTS, that alone is not enough to warrant the court's exercise of specific jurisdiction over a party.

Plaintiff also argues that jurisdiction over all three named defendants is warranted because Nokian PLC, Nokian North America, and Nokian Holdings are indistinct from one another and that the contacts of one can be imputed to the other. Typically, subsidiary and parent corporations are separate entities and the contacts of one for purposes of jurisdiction are not attributable to the other.[36] However, an exception is made if the parent and subsidiary are not separate entities or when one acts as an agent of the other. "An alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations."[37] An alter ego relationship exists if there is "such unity of interest and ownership" that the two entities are indistinct from one another.[38] An agency relationship exists when "the subsidiary functions as the parent corporation's representative in that it performs services that are

---

[36]*Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001).

[37]*Id.* at 926.

[38]*Id.*

'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services."[39] Here, the record is insufficient to explain the necessary relationship between Nokian Holdings and the other companies. Kelly Gaede's affidavit merely states without any supporting details that Jari Lepisto of Nokian Holdings makes decisions for Nokian North America and acts at the direction of Nokian PLC. The one specific detail provided is that "Nokian PLC exercises strict control over its subsidiaries in North America by removing cash from . . . bank accounts as they see fit."[40] Dennis Gaede's affidavit states that Nokian PLC "exert[s] complete operational control over the subsidiaries,"[41] but again there are not enough supporting details provided for the court to make a finding regarding alter ego or agency relationships. The record does not allow the court to determine that Nokian PLC has so much control of daily operations that Nokian Holdings should be considered part of Nokian PLC rather than a separate corporation.[42] Thus, JTS has not established a prima face case of alter-ego or agency status.

---

[39]*Id.* at 928 (quoting *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994).

[40]Doc. 13-1 at p.6, ¶ 31, 38.

[41]Doc 13-1 at p. 29, ¶ 5.

[42]*Id.* at 926 (noting that a subsidiary's contacts are not imputed to the parent company when the parent merely monitors a subsidiary's performance or supervises financial and budget decisions); *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).

## V. CONCLUSION

Based on the preceding discussion the motion to dismiss at docket 9 is **GRANTED** as to Nokian Holdings, but **DENIED** as to Nokian PLC.

DATED this 23rd day of June 2015.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE