# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| **JTS, LLC d/b/a JOHNSON'S TIRE SERVICE, LLC,** | |
| Plaintiff, | 3:14-cv-00254 JWS |
| vs. | **ORDER AND OPINION** |
| **NOKIAN TYRES PLC; and NOKIAN TYRES, INC.,** | [Re: Motions at Docket 133, 139, & 145] |
| Defendants. | |

## I.  MOTIONS PRESENTED

At docket 139 plaintiff JTS, LLC d/b/a Johnson's Tire Service, LLC ("JTS") moves pursuant to Rules 59(e) and 60(b) for relief from the court's order at docket 131 granting summary judgment to defendants Nokian Tyres PLC and Nokian Tyres, Inc. (collectively, "Nokian"). Nokian opposes at docket 141. JTS replies at docket 144.

At docket 133 Nokian moves for prevailing party attorney's fees and costs, supported by a memorandum at docket 134, a bill of costs at docket 135, and an affidavit of counsel at docket 136. JTS did not file a response. Finally, at docket 145 Nokian moves for an order holding JTS in contempt of court for failing to comply with the court's order at docket 123. This motion has not yet been fully briefed, but for reasons discussed below it is appropriate to address it now.

Oral argument was requested on the motion at docket 139, but the court finds that oral argument would not be of further assistance to the court.

## II. BACKGROUND

JTS' complaint alleges that the parties entered into "a written and oral exclusive distributorship agreement whereby Defendants agreed to supply Nokian tires on specified terms and at specified prices."[1] JTS alleges that Nokian breached the parties' exclusive distribution agreement "by assigning new distributors of Nokian Tyres Tires in the Territory of Alaska without proper and timely notice of a change in the territory assigned or review of the market and product mix penetration as required under the 2014 Exclusive Distribution Agreement."[2] Based on this breach, JTS alleges causes of action for breach of contract, bad faith, and violations of Alaska's Unfair Trade Practices and Consumer Protection Act ("UTPCPA").

Nokian filed a motion for summary judgment on December 30, 2016, arguing that all of JTS' claims are barred by the statute of frauds.[3] JTS' January 20 deadline for responding to the motion came and went without a response from JTS. One week later JTS filed a tardy Rule 56(d) motion to extend the deadline for filing its response based on its need to depose its own President, Dennis Gaede ("Gaede"), and the fact that the January 12 deposition of Bernie Del Duca ("Del Duca"), President of Nokian Tyres, Inc., revealed facts relevant to unpled antitrust claims.[4] At docket 131 the court denied JTS' motion because JTS neither demonstrated excusable neglect under Rule 6(b)[5] nor good cause to defer consideration of Nokian's summary judgment motion under

---

[1] Doc. 1 at 3 ¶ 2.

[2] *Id.* at 1.

[3] Doc. 104.

[4] Doc. 116.

[5] Fed. R. Civ. P. 6(b)(1)(B).

-2-

Rule 56(d).[6] The court then granted Nokian's unopposed motion.[7] At docket 132 judgment was entered in favor of Nokian.

### III. STANDARDS OF REVIEW

JTS asks the court to reconsider its grant of summary judgment under two related rules: Rule 59(e) and 60(b).[8] Rule 59(e) provides that a party may file a motion to reconsider a judgment within 28 days of its entry. "Under Rule 59(e), "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. There may also be other, highly unusual, circumstances warranting reconsideration."[9]

Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for" several enumerated reasons.[10] JTS cites the following reasons: (1) surprise and excusable neglect and (2) "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." "To succeed on a Rule 60(b) motion, 'a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'"[11]

---

[6] Fed. R. Civ. P. 56(d).

[7] Doc. 131 at 3.

[8] See Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc., 5 F.3d 1255, 1262 (9th Cir. 1993) ("A district court may reconsider its grant of summary judgment under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment).").

[9] Id. at 1263.

[10] Fed. R. Civ. P. 60(b).

[11] Thompson v. Kernan, No. 06-CV-2314-IEG-RBB, 2015 WL 7820679, at *1 (S.D. Cal. Dec. 2, 2015) (quoting Bradley v. Olmos, No. 1:10-cv-1459-MJS PC, 2013 WL 1326611, at *1 (E.D. Cal. Mar. 29, 2013)).

-3-

## IV. DISCUSSION

### A. Reconsideration Is Not Warranted

Del Duca testified at his deposition that the parties had an "oral selectivity distribution agreement."[12] Based on this testimony, JTS argues that reconsideration is warranted for four reasons: (1) Del Duca's testimony was a surprise; (2) Del Duca's testimony is newly discovered evidence; (3) JTS' untimely receipt of the deposition transcript was caused by excusable neglect; and (4) Del Duca's testimony renders the court's order manifestly unjust.

#### 1. Surprise

JTS asserts that Del Duca's testimony was "surprising and contradicted the prior deposition of James Johnson on which the Motion for Summary Judgment relied."[13] Maybe so, but this is not the type of surprise that justifies reconsideration. Cases interpreting "surprise" in the context of Rule 60(b) make clear that "deliberate or willful conduct on the part of the person seeking relief from the judgment precludes, by its very nature, a finding of 'mistake' or 'inadvertence' or 'surprise' or 'excusable neglect.'"[14] JTS knew that Del Duca testified about a selectivity agreement before the deadline for filing its summary judgment response. Yet, it deliberately chose not to file a response that mentioned the testimony and chose not to timely move for an extension of time in order to incorporate Del Duca's testimony into its opposition. These deliberate choices preclude a finding that Del Duca's testimony was the type of surprise that justifies reconsideration of the court's order.

---

[12]Doc. 139 at 3 (citing doc. 139-1 at 5–6).

[13]*Id.*

[14]12–60 *Moore's Federal Practice - Civil* § 60.41 (3d ed. 2017) (quoting Fed. R. Civ. P. 60(b)(1)).

-4-

### 2. Newly discovered evidence

JTS concludes without analysis that Del Duca's testimony is newly discovered evidence. It is not. If evidence is available to a party before the filing deadline, that evidence is not "newly discovered."[15] Because JTS was aware of Del Duca's testimony before the entry of judgment, Rule 60(b) relief is not justified.[16]

### 3. Excusable neglect

JTS argues that its' receipt of the Del Duca deposition transcript after the January 20 deadline somehow amounts to excusable neglect.[17] JTS fails to elaborate on this argument or provide the court with any analysis of the concept of excusable neglect. More importantly, JTS misses the point. The relevant neglect is JTS' failure to file a timely motion for an extension of time if indeed it believed that Del Duca's testimony was essential to its opposition. JTS offers no justification for this neglect.

### 4. Manifest Injustice

Even if JTS had timely moved for an extension of time, the court would not have granted JTS' motion because JTS has not shown that Del Duca's testimony is relevant, let alone essential to its opposition to Nokian's motion. JTS previously argued that Del Duca's testimony is relevant to unpled antitrust claims. The court rejected that argument because antitrust claims are not part of this case.[18] Undeterred, JTS now argues that Del Duca's testimony is relevant to unpled UTPCPA claims based on misleading statements.[19] These unpled claims suffer the same defect as the previous

---

[15]*Multnomah Cty.*, 5 F.3d at 1263.

[16]*See Mas Marques v. Digital Equip. Corp.*, 637 F.2d 24, 29 (1st Cir. 1980) ("In these circumstances, particularly where Mas Marques should have been aware of the deficiencies in his case before the entry of judgment, relief under Rule 60(b) would not have been justified.").

[17]Doc. 139 at 4.

[18]Doc. 131 at 3.

[19]Doc. 139 at 7–8.

-5-

unpled claims—they are not actually part of this case. For this reason, Del Duca's testimony does not render the court's decision manifestly unjust. JTS' motion will be denied.

**B.    Attorney's Fees**

District courts follow state rules for awarding attorney's fees when exercising their subject matter jurisdiction over state-law claims.[20] In Alaska, Rule 82 provides for an award of attorney's fees to the "prevailing party" in a civil case.[21] A party prevails if it succeeds on "the main issues in the action,"[22] or if the case against it is dismissed, even when there is no final determination on the merits.[23] When a case is resolved without trial and the prevailing party does not recover a money judgment, the prevailing party is entitled to twenty percent of the "actual attorney's fees [it] necessarily incurred."[24]

The court may vary an attorney's fee award based on the factors set out at Rule 82(b)(3). "Application of Rule 82(b)(3) factors is discretionary, not mandatory."[25] Although "enhanced fees may be awarded under any of the subparagraphs of Rule 82(b)(3), . . . full fees may be awarded . . . only if the 'vexatious or bad faith

---

[20] *MRO Communications v. American Tel. & Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir.1999) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975)).

[21] AK. R. Civ. P. 82(a).

[22] *Bowman v. Blair*, 889 P.2d 1069, 1075 (Alaska 1995) (citing *Alaska Placer Co. v. Lee*, 553 P.2d 54, 63 (Alaska 1976); *Cooper v. Carlson*, 511 P.2d 1305, 1308 (Alaska 1973)).

[23] *Hart v. Wolff*, 489 P.2d 114, 119 (Alaska 1971).

[24] AK. R. Civ. P. 82(b)(2).

[25] *Rhodes v. Erion*, 189 P.3d 1051, 1055 (Alaska 2008).

conduct' standard of Rule 82(b)(3)(G) is satisfied."[26] Conduct that is legally or factually deficient may support an inference of vexatious or bad faith litigation conduct.[27]

The crux of JTS' complaint is that Nokian breached the parties' "written and oral exclusive distributorship agreement."[28] The record shows, however, that JTS knew no such written agreement existed when the complaint was filed. Nokian provided the court with a pre-complaint email written by Gaede in which Gaede states that he reviewed "historical documentation from Nokian" and found "nothing specifically stating JTS' exclusive [sic]."[29] Gaede also stated that the cease and desist letter JTS sent to a competitor was a "toothless threat" because JTS lacked "actual documentation stating [the exclusivity agreement] from Nokian."[30]

In addition, JTS' Operations Manager and General Counsel, Bryon E. Collins ("Collins"), wrote a pre-complaint email in which he states that "Nokian is the only vender of JTS without an exclusive distribution agreement for all of Alaska."[31] Further, in June 2014 Gaede wrote a letter to Nokian to which he attached a proposed exclusivity agreement that was purportedly meant to "memorialize" the parties' "past dealings."[32] Nokian never signed this agreement and Jim Johnson, JTS' former owner,

---

[26]*Johnson v. Johnson*, 239 P.3d 393, 400 (Alaska 2010).

[27]*See id*. at 401. *See also Ware v. Ware*, 161 P.3d 1188, 1200 (Alaska 2007); *Crittell v. Bingo*, 83 P.3d 532, 537 (Alaska 2004); *Garrison v. Dixon*, 19 P.3d 1229, 1235 (Alaska 2001) ("We have previously upheld an award of full attorney's fees against plaintiffs whose claim was found to be brought 'merely to harass and delay,' and the record supports a similar conclusion here.") (quoting *Keen v. Ruddy*, 784 P.2d 653, 657 (Alaska 1989)).

[28]Doc. 1 at 3 ¶ 2.

[29]Doc. 134-3 at 1.

[30]*Id.*

[31]Doc. 134-4 at 1.

[32]Doc. 134-5.

-7-

testified that JTS never had an exclusivity agreement with Nokian.[33]  Finally, in contradiction of its own complaint, JTS eventually admitted in discovery that no written exclusive distribution agreement exists.

Ample evidence in the record shows that JTS knew that allegations in its complaint had no basis in fact, and therefore it can be reasonably inferred that JTS brought this action in bad faith.  JTS' failure to respond to Nokian's arguments on this point is an effective admission of bad faith.  Under the circumstances, the court finds that an award of full attorney's fees is warranted.  The court has reviewed the spreadsheet that Nokian's counsel submitted[34] and finds that the times and rates billed are reasonable.

**C.    Nokian's Motion to Hold JTS in Contempt**

Given that the court has awarded Nokian full reasonable attorney's fees, the court will vacate the order at docket 123 that awards Nokian partial attorney's fees as a discovery sanction.  As a result, Nokian's motion at docket 145 is denied as moot.

**D.    Taxable Costs**

Taxation of costs other than attorney's fees is subject to Rule 54(d)(1).  Local Rule 54.1 provides that a party seeking to recover taxable costs must serve on each party a cost bill and notice of the date and time of the cost bill hearing.[35]  Nokian served its bill of costs on JTS,[36] but did not provide the requisite notice regarding the cost bill hearing. Within the next 10 days Nokian shall schedule a cost bill hearing and serve notice of the hearing on JTS.

---

[33]Doc. 134-2.

[34]Doc. 136-1.

[35]D.Ak. L.R. 54.1(a)(1).

[36]Doc. 135 at 1.

-8-

## V. CONCLUSION

For the reasons set forth above, Nokian's motion at docket 133 is GRANTED IN PART AND DENIED IN PART as follows: Nokian is awarded $98,723.75 in attorney's fees. Nokian's motion for taxable costs is denied without prejudice. Within 10 days Nokian shall contact the Clerk's office to set a cost bill hearing and serve notice of the hearing on JTS in compliance with Local Rule 54.1(a). JTS' motion at docket 139 is DENIED. The order at docket 123 is VACATED, and Nokian's motion at docket 145 is DENIED as moot.

DATED this 14th day of June, 2017.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT JUDGE